Kent C. WELTIN, Appellant,

v.

STATE of Alaska, Appellee.

No. 2932.

Supreme Court of Alaska.

Feb. 17, 1978.

Edgar Paul Boyko and Mitchel J. Schapira of Edgar Paul Boyko & Associates, P. C., Anchorage, for appellant.

Dean J. Guaneli, Asst. Atty. Gen., David Shimek, Asst. Dist. Atty., Fairbanks, Daniel W. Hickey, Chief Prosecutor and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Justice.

The central issue in this appeal concerns the superior court's denial of Weltin's motion to suppress. Appellant was indicted for the crime of possession of cocaine.[1] He subsequently filed a motion to suppress as evidence a vial and its contents which had been removed from his pocket. This motion was grounded on the assertion that the vial had been taken from him pursuant to an unreasonable search and seizure. After conducting an evidentiary hearing, the superior court denied Weltin's motion.[2]

Thereafter, Weltin changed his plea to nolo contendere reserving the right to appeal from the superior court's denial of his suppression motion. The superior court sentenced Weltin to pay a $500 fine within 30 days.[3] This appeal followed.

The relevant facts pertaining to the search and seizure issue are as follows. Officer Frederick Gray observed Weltin making an illegal right turn from the left lane of traffic. Since Gray was on foot, he waved Weltin to the side of the road with his flashlight. Gray then ran a routine check on Weltin and ascertained that there was an outstanding warrant for Weltin's arrest. The outstanding warrant was for failing to appear in connection with a minor traffic violation. Weltin was then placed under arrest. Another policeman, James Fitzgerald, had arrived at the scene and, with Officer Gray, commenced a pat-down

---

1. AS 17.10.010 provides:

 It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, give, barter, supply or distribute in any manner, or compound any narcotic drug except as authorized in this chapter.

 AS 17.10.230(13) defines "narcotic drugs" as follows:

 'narcotic drugs' means coca leaves, opium, isonipecaine, amidone, isoamidone, ketobemidone, and every other substance having similar physiological effects . . . .

2. The search and seizure ruling was made by Superior Court Judge James R. Blair. After the suppression motion was denied, Weltin filed a petition for review in this court. The petition was denied.

3. Sentence was imposed by Superior Court Judge Gerald J. Van Hoomissen.

of Weltin prior to placing him in Officer Fitzgerald's patrol car to be transported to the police station.

Officer Fitzgerald testified that during the course of his pat-down of Weltin, he felt something hard in Weltin's left shirt pocket. According to Officer Fitzgerald, Weltin then pushed Fitzgerald's hand away from the area of his shirt pocket and stated that they could not search him without a search warrant. The officers then handcuffed Weltin's hands behind his back. Officer Fitzgerald first removed from Weltin's shirt pocket a 2½–3 inch nail whose sharp end had been bent and flattened into a spoon shape. Officer Fitzgerald also removed from Weltin's shirt pocket a glass vial, approximately one inch long and ⅜ inch in diameter, containing a white powdery substance. At this time, a crowd of 30 to 50 persons had gathered and the officers, fearing a disturbance, decided not to continue their pat-down of Weltin.[4] Appellant was placed in the patrol car before a complete frisk could be completed.[5]

At the police station, Officer Fitzgerald opened the vial and conducted field tests. The substance contained in the vial reacted positively to the test for cocaine. While Weltin was being booked and searched, he informed Officer Gray that he had dropped a gun in the patrol car. The weapon was subsequently located in the patrol car.

We will first address the question whether the superior court erred in not suppressing the evidence in question. Weltin has advanced three grounds in support of his argument that the evidence seized should have been suppressed as the result of an unconstitutional search and seizure. First, Weltin contends that the removal of the vial from his pocket was an unconstitutional search. Next, Weltin argues that the subsequent opening of the vial constituted an unreasonable search. Last, Weltin argues that his right to privacy was infringed by the warrantless searches.

Based upon our analysis of the parties' arguments and the particular factual context under which the vial was seized and searched, we have concluded that the superior court did not err in its refusal to grant Weltin's motion to suppress. We think it unnecessary to engage in a protracted exegesis of the complex law of search and seizure for it is our belief that the warrantless searches in question can be upheld pursuant to a well-established exception to the warrant requirement.

In *McCoy v. State*, 491 P.2d 127, 132 (Alaska 1971), this court had occasion to comment upon the "long-recognized exception to the warrant requirement for searches of the person incident to a valid arrest."[6] In *McCoy*, we observed that the boundaries of the area which could be searched were based upon two rationales originally advanced by Justice Frankfurter for this exception to the warrant requirement:

'first, . . . to protect the arresting officer and to deprive the prisoner of potential means of escape and, secondly, to avoid destruction of evidence by the arrested person. From this it follows that officers may search and seize not only the things physically on the person arrested, but those within his immediate physical control.'[7]

Even in its decision in *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969), which limited the permissible scope of the search incident to an arrest exception to the Fourth Amend-

---

4. One person in the crowd was arrested.

5. In its brief the state observed: "Had it not been for the presence of the crowd and the commotion caused by the arrest of another person, the officers probably would have found the handgun appellant was carrying. The officers were not assured of their safety merely because appellant was handcuffed. Often persons can get their hands from behind their backs and reach their pockets."

6. *E. g., Weeks v. United States*, 232 U.S. 383, 392, 34 S.Ct. 341, 344, 58 L.Ed. 652, 655 (1914) (dictum).

7. *McCoy v. State*, 491 P.2d 127, 132 (Alaska 1971), *quoting* from Justice Frankfurter's dissent in *United States v. Rabinowitz*, 339 U.S. 56, 72, 70 S.Ct. 430, 437, 94 L.Ed. 653, 663–64 (1950) (citations omitted).

ment's warrant requirement, the Supreme Court of the United States said, in part:

> [I]t is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated.

This court, in an unbroken line of decisions commencing with *Goss v. State*, 390 P.2d 220, 223 (Alaska 1964), has recognized the warrantless search incident to a lawful arrest exception to the warrant requirement.[8] In *Merrill v. State*, 423 P.2d 686, 698–700 (Alaska 1967), appellant was apprehended at a remote highway location. After the officers had handcuffed Merrill, they seized weapons which were located in Merrill's vehicle. We upheld the search for the weapons and their seizure on the ground that the officers were justified in seizing weapons which might be used to effect escape or assault them. More recently, in *Avery v. State*, 514 P.2d 637 (Alaska 1973), we were confronted with a situation in which the officers went to a residence where James Avery was staying for the purpose of arresting him.[9] After gaining access to the dwelling, the police officers found Avery lying in bed in a doorless room about eight feet long and six feet wide. One of the officers arrested Avery and ordered him to get out of bed and dress himself. As Avery sat up, a dark woolen object appeared from beneath his pillow. The officer reached under the pillow, retrieved the woolen object, and discovered that it was a ski mask containing a .22 caliber pistol. In *Avery*, we concluded that the officer's discovery of the pistol was the result of a lawful warrantless search conducted incident to a legal arrest. In so holding, we stated in part:

> It is established that once a person is lawfully arrested, the arresting officers have the right, without a search warrant, to search 'the arrestee's person and the area "within his immediate control." . . .' for weapons and destructible evidence of the crime. The area of the pillow was well within the range of Avery's immediate control at the time of his arrest. We think that under the circumstances [the officer] . . . was justified in searching beneath the pillow in order to protect himself . . . .[10] (footnotes omitted)

In the case at bar there is no question that the arrest of Weltin was valid, nor is there a problem of contemporaneous timing of the search. Thus, we must answer the question whether Officer Fitzgerald's warrantless search and seizure of the vial comes within the warrantless search for weapons exception incident to a lawful arrest. As indicated previously, we have concluded that the searches in question were constitutionally permissible.

We think it clear that the removal of the nail and the vial were justified under the warrantless search for weapons incident to a lawful arrest exception to the warrant requirement. We deem it appropriate to emphasize the particular factual context under which the objects were taken from Weltin's possession. It was approximately 10:30 p. m. when Officer Fitzgerald arrested Weltin on the basis of the outstanding traffic warrant. Officer Fitzgerald then asked Weltin to step out of his car and to turn around and place his hands on top of his car. Officer Fitzgerald, assisted by Officer Gray, initiated a pat-down of Weltin in order to search for weapons. According to Officer Fitzgerald's testimony, he patted Weltin's shirt pocket "and hit something hard. At this time, he kind of pushed my hand away, and put his hand over his left shirt pocket, and stated that we couldn't search him without a warrant." Then a brief struggle occurred which ended with the officers forcibly handcuffing Weltin's arms behind his back. Thereafter, the offi-

---

**8.** *See also Maze v. State*, 425 P.2d 235, 238 (Alaska 1967); *Zehrung v. State*, 569 P.2d 189 (Alaska 1977).

**9.** Avery conceded the legality of his arrest.

**10.** *Avery v. State*, 514 P.2d 637, 639–40 (Alaska 1973).

cers continued their weapons search with Officer Fitzgerald reaching into Weltin's shirt pocket "to pull out what I had patted there in the first place—some hard object." The transcript of Officer Fitzgerald's testimony reads:

Q. And what was it that you pulled out?
A. I pulled out a nail and glass vial.
Q. Okay. And in what order did you pull them out?
A. To the best of my recollection, I got the nail out first. . . .
Q. Okay. And then you subsequently went back in and. . . .
A. Right.

. . . . .

Q. Which—exactly which pocket was this removed from?
A. It was in his left shirt pocket.

Because of the actions of a bystander, and the gathering of a potentially hostile crowd of onlookers, Officers Gray and Fitzgerald broke off their pat-down of Weltin and placed him in the patrol car before they had completed their weapons search.[11]

 In light of these particular facts, we think the cases upon which appellant relies are distinguishable.[12] Here, in the face of a truculent defendant and a potentially hostile crowd of bystanders, the officers attempted to conduct a pat-down search of Weltin for weapons before placing him in the patrol car. During the course of his pat-down of Weltin, Officer Fitzgerald's hand hit something hard in Weltin's left shirt pocket. Thus, we think it was reasonable for the officer to remove these hard items from Weltin's shirt pocket.[13] We cannot say as a matter of law that it was unreasonable for Officer Fitzgerald to have removed these hard items in the course of carrying out his search for weapons. Thus, we hold that the search of Weltin's shirt pocket was permissible under the warrantless search for weapons incident to a lawful arrest exception to the warrant requirement.

Weltin further contends that even if the search was valid to the point that Officer Fitzgerald removed the vial from his pocket, the subsequent opening of the vial and testing of the contents was unconstitutional. The state responds that since the vial was clear glass, the officer had a plain view of its contents and, thus, the opening and testing were permissible.

 Our recent opinion in *Anderson v. State*, 555 P.2d 251, 256–57 (Alaska 1976), defined the core issue in "plain view" determinations to be "how much movement, probing or testing of an apparently innocuous object, aimed at uncovering an incriminating characteristic, is permitted." As we view the matter, the key is whether the clear glass vial containing white powder was "an apparently innocuous object." Un-

---

11. Officer Fitzgerald further testified that they had to discontinue their pat-down of Weltin because of an interruption. The officer stated:

We had—had forcibly cuffed Mr. Weltin. And at this time, just as we got him cuffed, a lady by the name of Betty Hummel (ph) approached us. By then, a crowd was just starting to gather, and Betty Hummel (ph) started yelling—stating that we couldn't handcuff him, and that we were treating him too mean—type, you know . . . .

Her—her interruption was agitating other people around us. We'd been having problems on the street with—we make an arrest, and if somebody starts—starts a commotion, the next thing we know, we got beer bottles flying at us.

12. Appellant cites us to the following authorities: *People v. Leib*, 16 Cal.3d 869, 129 Cal. Rptr. 433, 548 P.2d 1105 (1976); *Kaplan v. Superior Court of Orange County*, 6 Cal.3d 150,

98 Cal.Rptr. 649, 491 P.2d 1 (1971); *People v. Collins*, 1 Cal.3d 658, 83 Cal.Rptr. 179, 463 P.2d 403 (1970); and *People v. Mosher*, 1 Cal.3d 379, 82 Cal.Rptr. 379, 461 P.2d 659 (1969).

13. The following interchange occurred at the suppression hearing between Officer Fitzgerald and Weltin's trial attorney:

Q. Did you feel that the vial could be used as a weapon?
A. After I got it out of his pocket?
Q. Before you got it out of his pocket.
A. Any hard object—we look at any hard object in a subject's pocket as being a potential weapon.
Q. Okay. Did you—did you feel that this was a potential weapon?
A. Yes.
Q. . . . What weapon did you feel it could be?
A. I had no idea.

like the opaque containers which were factually relevant in *McCoy v. State*, 491 P.2d 127 (Alaska 1971), and *Schraff v. State*, 544 P.2d 834 (Alaska 1975), the white powder was immediately apparent when the vial was taken from Weltin's shirt pocket. Furthermore, Officer Fitzgerald testified that based on his prior experience, he thought the white powder was cocaine or heroin. In addition to the observance of the white powder, the bent nail had been flattened at the end to resemble a spoon shape. As cocaine is often ingested by sniffing out of a small spoon, there was a further indication that the white powder was cocaine. Thus, we conclude that opening the vial and testing the substance contained therein were justified under the "plain view" doctrine.[14] We therefore hold that the superior court did not err in denying Weltin's motion to suppress.[15]

■ Appellant's second point on this appeal is that the sentence imposed by the superior court was excessive. The superior court sentenced Weltin to pay a fine in the amount of $500. In so doing, the sentencing court noted that Weltin had no prior criminal violations and that rehabilitation was not a problem. Further, the sentencing court did not consider Weltin to be a danger to himself or to society. However, two considerations prompted the superior court not to suspend imposition of the sentence: the need to impress Weltin with the seriousness of his offense and the fact that Weltin had been carrying a gun. Since the superior court did not believe that probation was required, it imposed a fine in the amount of $500. Assuming we have jurisdiction to pass on the excessiveness of the fine [16] under the "clearly mistaken" standard of sentence review articulated in *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970), we conclude that the sentence was not excessive.[17]

Affirmed.

**14.** *See, e. g., Bell v. State*, 519 P.2d 804 (Alaska 1974); *Daygee v. State*, 514 P.2d 1159 (Alaska 1973); *State v. Davenport*, 510 P.2d 78 (Alaska 1973).

**15.** Implicit in our holding is the rejection of appellant's contention that the explicit right of privacy protected by Article I, Section 22 of Alaska's constitution mandates that the superior court's suppression decision be reversed. In our view, the provisions of Article I, Section 22 of the Alaska Constitution in the circumstances of this case do not add to the privacy protections provided by Article I, Section 14 (which provisions substantively parallel those contained in the Fourth Amendment to the Federal Constitution).

**16.** AS 12.55.120(a) provides, in part:

A sentence of imprisonment lawfully imposed by the superior court for a term or for aggregate terms *exceeding one year* may be appealed to the supreme court by the defendant on the ground that the sentence is excessive. (emphasis added)

Appellate Rule 21(a)(1) provides:

(a) At the time of imposition of any sentence of *imprisonment of 45 days* or more, the judge shall inform the defendant as follows: (1) That the sentence may be appealed to the supreme court on the ground that it is excessive. (emphasis added)

**17.** In *Nattrass v. State*, 554 P.2d 399, 401 (Alaska 1976), we noted:

[W]hether or not a sentencing court should impose a suspended imposition of sentence in a given case is, by AS 12.55.085(a), left to the discretion of the sentencing court.