MANNHEIMER, Judge.
Shelton L. Landon was convicted of fourth-degree misconduct involving a controlled substance (running a marijuana growing operation) and was sentenced to a 2-year term of imprisonment. On February 23, 1995, Landon reported to the Mat-Su Pretrial Correctional Facility to begin serving his sentence. Upon Landon’s arrival, prison officials searched the private belongings that Landon had brought with him. During this search, the prison officials removed the insoles of Landon’s shoes and discovered hollowed out compartments in the soles. Inside these compartments, Landon had hidden packages of marijuana. Based on this discovery, Landon was indicted for promoting contraband in the first degree (smuggling a controlled substance into a correctional facility), AS 11.56.375(a)(3).
In the superior court, Landon argued that the search of his shoes was illegal. The superior court agreed and suppressed the marijuana. The State has petitioned us to review this ruling.
The question presented is whether, in the absence of a search warrant, prison officials are authorized to search the private belongings of prisoners who are booked into a corrections facility to begin serving their sentences. We hold that prison officials are authorized to conduct such searches, and we therefore reverse the ruling of the superior court.
Under both the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Alaska Constitution, the scope of a person’s right to be free of government-sponsored search and seizure ultimately depends on the person’s expectation of privacy and the reasonableness of that expectation. Hudson v. Palmer, 468 U.S. 517, 524-25, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 393, 402 (1984); State v. Glass, 583 P.2d 872, 874-75 (Alaska 1978), on reh’g, 596 P.2d 10 (Alaska 1979). Under federal law, a person who has been committed to the custody of a corrections agency to serve a prison sentence has little or no expectation of privacy in his possessions. Hudson v. Palmer, 468 U.S. at 525-26, 529-30,104 S.Ct. at 3200, 3201-02, 82 L.Ed.2d at 402-03, 404-05 (holding that a prisoner has no expectation of privacy in the contents of his or her cell); United States v. Robinson, 414 U.S. 218, 237, 94 S.Ct. 467, 477, 38 L.Ed.2d 427, 441 (1973) (Powell, J., concurring) (“[A]n individual lawfully subjected to a custodial arrest retains no significant Fourth Amendment interest in the privacy of his person.”). In Landon’s case, however, the superior court concluded that the Alaska Constitution called for a different result.
The superior court’s ruling hinged on the possibility that Landon could have chosen to wear a pair of prison-issue shoes while he served his sentence, and to place his own shoes in storage. According to the evidence presented at the suppression hearing, all prisoners who arrive to begin serving a sentence are given this election (the choice of wearing their own shoes in prison or of receiving a pair of prison-issue shoes). If prisoners choose to wear prison-issue shoes, their own shoes are placed in storage at the prison.
The prison authorities searched Landoris shoes shortly after his arrival at the corrections facility, before he had made the election of wearing his own shoes or prison-issue shoes. Thus, there remained a possibility that Landon would choose to place his shoes in storage rather than wear them in prison. Based on this possibility, and based on the Alaska Supreme Court’s decision in Reeves v. *179 State, 599 P.2d 727 (Alaska 1979), the superi- or court held that Landon retained an expectation of privacy with regard to his shoes.
In Reeves, the supreme court addressed the authority of jail officers to search the person of an arrestee and to inventory his or her possessions. The court held that an arrestee retains a privacy interest in his or her property, and that this interest had to be weighed against the jail guards’ interest in preventing weapons and/or contraband from being introduced into the jail. 599 P.2d at 734-35. The court balanced these interests by declaring:
[Jail authorities] may require internees to surrender any possible repositories for [weapons or contraband] prior to incarceration. However, [while jail authorities enjoy] wide authority to prohibit the entry of personal belongings which may harbor forbidden contents[, they have no] authority to conduct a general exploratory search of the belongings themselves [because, once] the internee has turned over his possessions for safe keeping[,] it is no longer possible that he may take them into the jail.
Reeves, 599 P.2d at 735-36 (quoting State v. Kaluna, 55 Haw. 361, 520 P.2d 51, 61 (1974)).
In Landon’s case, the superior court ruled that the prison authorities had no right to search Landon’s shoes unless and until Landon affirmatively chose to wear his own shoes in prison. The superior court reasoned that if Landon availed himself of the offered prison-issue shoes and placed his own shoes in storage, then even if Landon’s shoes contained contraband, that contraband would not be introduced into the prison population, and so the prison officials would have no justification for searching the shoes for hidden contents.
We find ourselves in disagreement with the superior court. The decision in Reeves turns on the fact that jail officials have only a limited interest in searching the personal belongings of an arrestee who may shortly post bail and depart. While the jail may frequently become the involuntary bailee of arrestees’ personal property, this bailment is tempered by the knowledge that many arres-tees are only temporary residents of the jail; they will soon leave and take their belongings with them. Thus, the Reeves court held that jail officials’ interest in an arrestee’s property is generally limited to insuring that the property stays isolated from the jail population for the brief span of the arrestee’s presence in the facility.
Prison officials, on the other hand, have a significantly greater interest in searching the personal belongings of a convicted prisoner who is booked into the facility to begin serving his or her sentence. Such prisoners are not temporary inhabitants of a corrections facility; they will be housed there (or in another facility designated by the commissioner of corrections) until the expiration of their sentences. Thus, prison officials often become long-term involuntary bailees of convicted prisoners’ personal belongings. In recognition of this fact, 22 AAC 05.035(a) requires each correctional facility to “provide a secure area where a limited amount of [each] prisoner’s personal property may be stored”.
Prison officials have an ongoing need to make sure that weapons, contraband, and other prohibited items remain unavailable to prisoners. Indeed, 22 AAC 05.067(c) authorizes prison officials to strip-search a prisoner at the conclusion of any contact visit, or whenever the prisoner returns from a classroom or any other area where tools are present or in use, or whenever the prisoner returns “from the grounds of a facility which are accessible for the introduction of contraband, or other similar circumstances”.
This last provision is relevant to Landon’s case. Even though a prisoner’s stored belongings may not immediately be introduced into the prison population, prisoners will from time to time ask to inspect or retrieve their personal belongings. Whenever prisoners gain access to their stored belongings, this raises a renewed possibility that weapons, contraband, or other prohibited items stored in those belongings will be introduced into the prison population. Thus, prison officials have an ongoing interest in making sure that a prisoner’s stored personal belongings do not contain weapons, contraband, or other prohibited items.
*180 It would theoretically be possible for prison officials to delay searching a prisoner’s stored personal belongings until each time the prisoner was actually given access to them. However, the constitution requires only that a search be reasonable. The question, then, is whether prison officials act reasonably when they search all of a convicted prisoner’s personal belongings at the time the prisoner reports to serve his or her sentence, even though some or all of those personal belongings may be placed in storage.
The constitutionality of the correctional facility’s search does not hinge on whether a different, arguably less intrusive policy can be imagined. Rather, under Reeves, the applicable standard is one of reasonable necessity. See Reeves, 599 P.2d at 737 (“The search of an arrestee’s person should be no more intensive than reasonably necessary to prevent the entry of weapons, illegal drugs, and other contraband or potentially dangerous items into the jail.”). When a convicted prisoner places his or her personal belongings into long-term storage at a correctional facility where the prisoner may have occasional access to them, a prompt search of those belongings is reasonably necessary to protect against the entry of weapons and/or contraband into the correctional facility. We therefore hold that the prison authorities were empowered to search Landon’s belongings — not just to inventory them, but to examine them for possible hidden weapons, contraband, or other prohibited items.
The decision of the superior court is REVERSED, and this case is remanded to the superior court for further proceedings on the indictment.
COATS, J., not participating.