**Stewart Peter KLENKE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3203.**

Supreme Court of Alaska.

Aug. 4, 1978.

John Hagey, Asst. Public Defender, Fairbanks, Brian Shortell, Public Defender, Anchorage, for appellant.

Natalie K. Finn, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

## OPINION

BURKE, Justice.

 Upon his plea of nolo contendere, appellant Stewart Peter Klenke was adjudged guilty of the crime of receiving and concealing stolen property.[1] The superior court sentenced him to a three year term of imprisonment.[2] In this appeal Klenke challenges the legality of a search leading to his arrest and conviction.[3] He further contends that his sentence was excessive.[4]

On February 14, 1976, members of the Alaska State Troopers conducted a search of Klenke's residence. The search was made pursuant to a search warrant listing several items of stolen property and a sawed-off shotgun. Certain items were seized and a list of other items found on the premises was prepared by Trooper Bowman, one of the officers participating in the search. Klenke was not present at the time.

---

1. AS 11.20.350 provides in part:

 *Buying, receiving, or concealing stolen property.* (a) A person who buys, receives, or conceals money, goods, bank notes, or other thing which may be the subject of larceny and which has been taken, embezzled, or stolen, from another person, knowing it to have been taken, embezzled, or stolen, is upon conviction punishable by a fine of not more than $1,000 and by imprisonment for not less than one year nor more than three years if the property bought, received, or concealed exceeds $250 in value; if the property bought, received, or concealed does not exceed $250 in value, by imprisonment for not less than one month nor more than one year or by a fine of not less that $25 nor more than $250.

2. *Id.*

3. The superior court accepted Klenke's plea of nolo contendere on the express condition that he was not thereby waiving his right to appeal the court's denial of his motion to suppress evidence of the fruits of the search. Thus, his right to appeal that issue was preserved under our holding in *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974). Otherwise, a plea of nolo contendere waives all non-jurisdictional defects. *Id.* Since it is clear that suppression of the evidence would have been fatal to the state's case, the acceptance of a "Cooksey plea" was appropriate. *Oveson v. Municipality of Anchorage,* 574 P.2d 801, 803 n. 4 (Alaska 1978).

4. AS 12.55.120(a) provides in part:

 A sentence of imprisonment lawfully imposed by the superior court for a term or for aggregate terms exceeding one year may be appealed to the supreme court by the defendant on the ground that the sentence is excessive.

 *See also* Rule 21, Alaska R.App.P.

On March 2, 1976, Trooper Bowman responded to a burglary complaint and arrested two individuals found in the victim's house. One of those individuals was Klenke but his identity was unknown to Trooper Bowman at that time. Using an alias, Klenke confessed his involvement in that burglary when later questioned at trooper headquarters.

During the early morning hours of March 3, 1976, Trooper Bowman learned of Klenke's true identity. After obtaining that information, Trooper Bowman returned to the jail and questioned Klenke about other crimes in the area. During the course of the questioning Klenke saw Trooper Bowman's list of the items observed during the search of his residence on February 14. Thereupon, Klenke confessed that many of those and other items in the trailer were stolen. Later in the day he signed a consent form allowing the police to go to his residence and seize the stolen property.

Following his indictment, Klenke filed a motion to suppress, claiming: (1) that the search of his trailer on February 14 exceeded in scope that which was authorized by the warrant, thus violating art. I, sec. 14 of the Constitution of Alaska,[5] and (2) that, therefore, his later statements and consent to search were the fruits of an unlawful search and seizure. At the hearing on his motion, Klenke testified, "I figured, well, they had it, so [I] might as well make a statement and stuff—let everything out." The motion was denied and Klenke entered his plea of nolo contendere. This appeal followed.

■■■ The thrust of Klenke's argument on appeal is that the officers conducting the search exceeded their authority when they seized items not listed on the warrant and made a general inventory of the other items that they felt were significant. Such activity, he argues, "amounted to a general ex-

ploratory search" of the sort condemned in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). *See also Anderson v. State,* 555 P.2d 251 (Alaska 1976); *State v. Davenport,* 510 P.2d 78 (Alaska 1973). Such argument is without merit.

In *State v. Davenport, supra,* we said:
This court will not countenance the use of an otherwise valid [search] warrant for the purpose of conducting a generalized search for incriminating evidence, nor will we look with favor upon any search undertaken with the undeclared intention of seizing property which has not been described in the warrant.

510 P.2d at 86. That view remains unchanged and was the reason for our recent condemnation of the seizure that occurred in *Anderson v. State, supra.* At the same time, we have also recognized the well-established rule that under particular circumstances and within narrowly defined exceptions, items not named in a search warrant may properly be seized. *See, e. g., State v. Davenport, supra.* One of those exceptions is that of "plain view." *Id.* That exception applies where an officer lawfully executing a search warrant, or otherwise engaged in a lawful intrusion, inadvertently comes across evidence whose incriminating nature is immediately apparent. *Coolidge v. New Hampshire,* 403 U.S. at 465, 91 S.Ct. at 2037, 29 L.Ed.2d at 582; *State v. Davenport, supra.* That exception, we believe, is applicable here.

Four officers participated in the search: Trooper Bowman, Trooper Mars, Trooper Harris and Investigator Kallus. The search warrant was issued by District Court Judge Mary Alice Miller, upon the affidavit of Trooper Bowman. According to that affidavit, certain property, including a tool box, had been stolen from a vehicle belonging to one Bruce Vliet on November 2, 1975; the tool box was pawned by Klenke on Decem-

---

5. Art. I, § 14 provides:
 *Searches and Seizures.* The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not

be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

ber 11, 1975; Trooper Bowman had been informed by one Michael Furrow that he had accompanied Klenke when he took the tool box from his trailer to the pawn shop; Vliet and Furrow had gone to Klenke's trailer where they observed a sawed-off shotgun in one of the bedrooms;[6] and that such an "illegal" weapon had been used in two recent armed robberies. The warrant authorized a search for a "single-barrel sawed-off shotgun, overall length 15–18 inches," and the following items of property stolen from Bruce Vliet:

2—propane catalytic heaters—Coleman brand

2—big Eveready batteries, red, 4 × 4 × 6 inches

6—gallons of Prestone anti-freeze

1—green suitcase, 20 × 16 × 5 inches, containing misc. clothes, papers

1—set of open end wrenches

1—set of metric wrenches

2—sets of sockets

Before executing the search warrant Trooper Bowman questioned other officers about Klenke. One, Investigator Arrants, told him that Klenke was a suspect in several burglaries in the area and that he had once been caught stealing tools from the father of a friend. Property stolen in the reported burglaries included firearms, television sets, radios and cameras.

Armed with this information the officers began their search of Klenke's trailer. In the lean-to or wanigan forming the entry area they observed four television sets, a tape deck with external speakers, and a .22 rifle that had been hidden there. At various locations inside the trailer they found another television set, a red Eveready flashlight, three radios, a Simpson multimeter, a loaded M–14 rifle, which they believed to be a fully automatic weapon, a Wittnaur movie camera and projector, an arrow case and arrows, a tool box, various hand tools, sockets and wrenches, some like those stolen from Vliet, a sawed-off shotgun, and a Polaroid camera with a case cut to hold the sawed-off shotgun when it was broken down.

The shotgun was found hidden in the base of a reclining chair. Two of the radios were hidden behind a removable panel in the back bedroom. Several of the items, including the television sets, appeared to have had their serial numbers removed. Some items had names on them other than Klenke's. Because of this, as well as the number and description of the items found, the officers suspected that many, if not all, of the items were stolen property. Therefore, all items considered worthy of further investigation were carried to a central location where they were examined for serial numbers, and a computer check was begun to determine whether any of the items had been reported stolen. At the same time, Trooper Bowman made his own list of the items.

Eventually, the following items were seized and listed on the return of the search warrant: (1) the sawed-off shotgun, possession of which is illegal under state and federal law; (2) the Eveready flashlight, which had been stolen from Vliet; (3) the multimeter, which was found in a case having the name "Burns" on the outside and matched the description of an item stolen in one of the recent burglaries; (4) the camera case cut to accommodate the sawed-off shotgun; (5) the .22 rifle; (6) the M–14 rifle, believed at the time to be a fully automatic weapon, and therefore illegal; and (7) the tool box having the name "Watt" on the front of it.

---

6. Much of this information apparently resulted from a private investigation conducted by Bruce Vliet before he reported the theft of his property to the police. After locating his tool box in a pawnshop he traced it to Klenke and then paid a visit to Klenke's trailer. Accompanied by Furrow, he entered the trailer and thereafter reported his observations to the Alaska State Troopers. It is clear that Vliet's search of the premises was done entirely on his own and not at the suggestion of the police. As stated in Bell v. State, 519 P.2d 804 (Alaska 1974):

A search by a private citizen not acting in conjunction with or at the direction of the police does not violate the constitutional prohibitions against unreasonable search and seizure.

519 P.2d at 807 (footnote omitted).

Klenke does not contest the validity of the search warrant. Nor does he contest the fact that the warrant authorized the officers to pry into all of those places where the property was found. In other words, there is no contention that the officers were looking into places too small to contain the items listed in the search warrant. His sole contention seems to be that the activities of the officers are to be condemned because they were akin to those of the police in *Anderson v. State, supra.*

In *Anderson* we held that there was an unlawful search and seizure, where officers armed with a search warrant for "marijuana, together with pipes, plastic baggies and other paraphernalia for the packaging and use of said drug," examined photographic slides found on the premises by holding them up to the light, thereby discovering evidence relating to the defendant's sexual abuse of young boys. Rejecting the state's argument that such evidence was in "plain view," and therefore subject to seizure even though not described in the warrant, we said:

> In the course of executing the search warrant for marijuana, the officers . . found themselves probing a slide projector and a stack of slides for the contraband substance. At that point it was not 'immediately apparent' to them that the slides were evidence, instrumentalities or fruits of a crime. It was only after they probed further, straying from the directives of the warrant, and held the slides to the light, that incriminating evidence of another crime fell into view.

> . . . . .

> Had the slides been left where they were found, or had the inspection of the slides been limited to one designed to uncover the type of evidence described in the warrant, marijuana and related paraphernalia, the incriminating quality of the slides would not have been detected.

555 P.2d at 258 (footnote omitted). Klenke now argues that the "moving, recording and computer checking of items in [his] trailer was a similar unconstitutional search."

We believe that the facts in this case are clearly distinguishable from those in *Anderson*. In the latter, the slides were "innocuous" until held up to the light. "They did not appear to be either evidence, instrumentalities, or fruits of a crime." 555 P.2d at 256. Here the officers found themselves literally surrounded by property generally matching the description of that known to have been stolen in several recent burglaries in which Klenke was a suspect. Some of the items had had the serial numbers removed, several had been hidden, and others bore the names of persons other than Klenke. Some were immediately recognized as stolen.

In *State v. Davenport,* 510 P.2d 78 (Alaska 1973), we held:

> [W]hen an officer has probable cause to believe that objects he discovers in the course of a valid search conducted under a valid warrant are the fruits of a particular theft, that officer may seize those items even though they are neither listed on the search warrant nor related to the crime which served as the basis for the warrant.

510 P.2d at 85 (footnote omitted). The requirement that the incriminating nature of property be "immediately apparent," so as to allow its seizure under the plain view exception to the warrant requirement, "means only that the officer must have probable cause to believe the property is [stolen, so as to be] subject to seizure." *State v. Streitz,* 258 N.W.2d 768, 773 (Minn. 1977). Here, the circumstances "gave rise to a reasonable inference that [the officers] had stumbled upon stolen goods." *Id.* Such being the case, the officers had probable cause to believe that the various items of property were stolen. *Id.; State v. Davenport, supra* at 85.

The essence of Klenke's argument is that the necessity of assembling the property and tracing serial numbers, as was done to determine whether particular items of property had, in fact, been reported stolen, belies the assertion that the incriminating nature of the property was "immediately ap-

parent," so as to be within "plain view" and subject to seizure. An identical argument was rejected by the Supreme Court of Minnesota in *State v. Streitz, supra.* We also reject it.[7]

With regard to Klenke's appeal of his three year sentence, we are unable to say that the superior court was clearly mistaken. Thus, his sentence must be affirmed. *McClain v. State,* 519 P.2d 811 (Alaska 1974).

AFFIRMED.

---

**7.** Even if we were to hold that the seizure was unlawful, there would still be a substantial question whether Klenke's confession was a "fruit of the poisonous tree." It is unnecessary, however, for us to reach this issue.