Kenneth E. DEAL, Appellant,

v.

STATE of Alaska, Appellee.

No. 4169.

Supreme Court of Alaska.

Nov. 28, 1980.

---

William D. McCool, Kenai, for appellant.

W. H. Hawley, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE and MATTHEWS, JJ.

OPINION

BURKE, Justice.

Kenneth Deal was convicted upon his plea of nolo contendere to four counts of burglary not in a dwelling, a violation of former AS 11.20.100.[1] As part of his plea, Deal expressly reserved the right to appeal the superior court's denial of his motion to suppress two money bags, and other evidence flowing therefrom, which had been seized from his vehicle. Deal was subsequently sentenced to a total of ten years,[2] with seven and one-half years suspended. In this appeal, Deal contends that the superior court erred in denying his motion to suppress and that his sentence is excessive.

On the evening of December 29, 1977, Kenneth Deal and two companions were involved in an automobile accident with an unoccupied parked car at the Kenai Mall. A Kenai Mall security guard who had witnessed the accident called the Kenai police and Officer Anastay was dispatched to the scene. After speaking with both the security guard and Deal, who had been driving, Officer Anastay advised Deal that he was under arrest for negligent driving. Officer Anastay then transported Deal to the Kenai police station for questioning.

Shortly before Officer Anastay and Deal left the scene, another officer, Sgt. Ahlfors, arrived. After conferring briefly with Officer Anastay, Sgt. Ahlfors took an oral statement from the security guard who had witnessed the accident, and then moved to secure Deal's vehicle. Upon opening the passenger door to allow the two remaining occupants to exit the vehicle, Sgt. Ahlfors saw two folded money bags on the floorboard next to the passenger seat. At the time this observation was made, Sgt. Ahlfors was aware that Deal was a suspect in several recent burglaries and that Deal had recently purchased a car with a large number of small bills. With this information in mind, Sgt. Ahlfors unfolded and examined the money bags and, after completing the process of securing the car, returned to the police station with the money bags.

While Sgt. Ahlfors was securing Deal's vehicle, Officer Anastay was at the station questioning Deal about the accident. When Sgt. Ahlfors arrived at the station with the money bags, the questioning turned to the burglaries. After being confronted with the money bags, Deal gave a complete confession to four burglaries.

Following his indictment on four counts of burglary not in a dwelling, Deal moved to suppress use of the money bags and confession as fruits of an illegal search and seizure. After an evidentiary hearing, the superior court denied this motion. Deal thereupon pleaded nolo contendere to all four counts, expressly reserving his "right to appeal on the issue[s] of illegal search and seizure and voluntariness of [his] confession."[3] Deal was sentenced shortly thereafter.

---

1. AS 11.20.100 provided as follows:

 *Burglary not in dwelling house.* A person who breaks and enters a building within the curtilage of a dwelling house but not forming a part of it, or who breaks and enters a building or part of it, or a booth, tent, railway car, vessel, boat, or other structure or erection in which property is kept, with intent to steal or to commit a felony in it, is guilty of burglary, and upon conviction is punishable by imprisonment in the penitentiary for not less than two nor more than five years. In its recent revision of the state's criminal statutes, the Alaska legislature repealed this section, effective January 1, 1980. Ch. 166,

 § 21, SLA 1978. The conduct proscribed in this section is now covered by AS 11.46.300–.310 (burglary).

2. Deal was given the maximum sentence of five years on each of the four counts. The sentences on Counts I and II are to run consecutively as are the sentences on Counts III and IV. The consecutive sentences on Counts I and II, however, are to run concurrently with the consecutive sentences on Counts III and IV.

3. We first approved of the reservation of a limited right to appeal as part of a nolo contendere plea in *Cooksey v. State,* 524 P.2d 1251

We turn first to the preliminary question of what arguments have been effectively preserved for appeal. At the trial court level, Deal challenged the money bags and the evidence flowing therefrom as being the tainted fruit of a warrantless search which could not be justified under the plain view exception to the warrant requirement. In support of this position, he argued that (1) the money bags had not been in plain view; (2) Sgt. Ahlfors had no right to secure the vehicle and thus was not in a place where he had a right to be when he first saw the bags; (3) there was no probable cause to seize the bags; and (4) the confession was involuntary since it was the direct result of confronting Deal with the illegally seized money bags. On appeal, Deal now seeks to raise, in addition to those theories argued below, the following arguments which admittedly were not directly raised before the trial court: (1) that his arrest was illegal under AS 12.25.030;[4] (2) that his arrest was an invalid pretext arrest; (3) that his arrest was against public policy; (4) that the evidence in question was the tainted fruit of an illegal, invalid arrest; (5) that his *Miranda* rights were violated; and (6) that Sgt. Ahlfors' discovery of the money bags was not inadvertent.

■ Relying heavily on the recent Washington Court of Appeals decision in *State v. Gallo*, 20 Wash.App. 717, 582 P.2d 558, 563 (1978), Deal contends that by raising a general challenge to the evidence in question at the trial court level, he effectively preserved his right to argue on appeal not only those arguments expressly raised below, but also those previously unraised alternative arguments which would result in the suppression of the challenged evidence. We disagree.

■ We indicated our approval of *Gallo* in *Reeves v. State*, 599 P.2d 727, 731 n.8 (Alaska 1979). In so doing, however, we did not intend to abandon the well-settled rule that a plea of nolo contendere operates as a waiver of all non-jurisdictional defects which have not been expressly preserved for appeal as a condition of the plea. *See, e. g., Hunter v. State*, 590 P.2d 888, 892 (Alaska 1979); *Cooksey v. State*, 524 P.2d 1251, 1255–56 (Alaska 1974). Rather, we merely intended to emphasize that a defendant need not expressly reserve the individual theories underlying his legal arguments in order to effectively preserve those theories for appeal. An express reservation of the general arguments on which his objection to the challenged evidence is based will suffice. *Cf. Lewis v. Anchorage Asphalt Paving Co.*, 535 P.2d 1188, 1195 (Alaska 1975) (statement of points on appeal held not to require an elaboration of the legal theories on which the appeal is based). Once a general argument has been so preserved, the details of *that argument* may be expanded or refined on appeal. The general prohibition against raising other arguments for the first time on appeal remains fully in effect. In this case, it is clear that Deal intended only to preserve for appeal the general argument that had been raised in support of his motion to suppress. As stated above, that argument was that the evidence in question was the tainted fruit of an illegal, warrantless search which could not be justified under the plain view excep-

---

(Alaska 1974). In *Oveson v. Municipality of Anchorage*, 574 P.2d 801, 803 n.4 (Alaska 1978), we refined this rule, providing that appeals under the *Cooksey* doctrine would no longer be approved "unless it is clearly shown, and the parties have stipulated with trial court approval, that our resolution of the issue reserved for appeal will be dispositive of the entire case." In this case, Deal's conditional plea was not accompanied by the required stipulation. This defect was cured, however, when the record was supplemented with a conforming stipulation. Review of the issues reserved on appeal is thus appropriate.

4. AS 12.25.030 provides:

*Grounds for arrest by a private person or a peace officer without warrant.* A private person or a peace officer without a warrant may arrest a person

(1) for a crime committed or attempted in his presence;

(2) when the person has committed a felony, although not in his presence;

(3) when a felony has in fact been committed, and he has reasonable cause for believing the person to have committed it.

tion to the warrant requirement.[5] He is thus free to argue on appeal, in addition to the theories raised below before the trial court, the previously unraised theory that the discovery of the money bags was not inadvertent. Since an "inadvertent discovery" is an accepted element of the plain view exception,[6] the inclusion of this theory on appeal is a permissible expansion of the general argument raised below. He is not free, however, to raise arguments such as the legality or validity of his arrest or the alleged violation of his *Miranda* rights which are wholly separate and distinct from the argument preserved for appeal. Such unrelated arguments are waived and will not be considered on appeal.[7] *See, e. g., Reeves v. State*, 599 P.2d at 731; *Gray v. State*, 596 P.2d 1154, 1157–58 (Alaska 1979). *Cf. Gordon v. State*, 577 P.2d 701, 703 (Alaska 1978) (arguments which are not included in the statement of points on appeal will not be considered).[8]

We turn now to the question of whether Sgt. Ahlfors' discovery and seizure of the money bags was constitutionally permissi-ble. The state concedes that Sgt. Ahlfors did not have a search warrant when he entered Deal's car and discovered the money bags. It is the state's position, however, that the discovey and seizure of the money bags comes within the plain view exception to the warrant requirement.

A search conducted without a warrant will ordinarily be regarded as per se unreasonable unless it falls within one of the narrowly defined exceptions to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *Erickson v. State*, 507 P.2d 508, 514 (Alaska 1973). One of these recognized exceptions is the plain view doctrine which allows the warrantless seizure of evidence observed in plain view by a police officer from a place where he or she has a legal right to be. *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971); *Reeves v. State*, 599 P.2d at 738. When asserting the plain view exception, the state must prove not only that the evidence

---

5. That this was Deal's intent can be seen from the following portion of the transcript:

MR. MC COOL: Your Honor, we are going to plead nolo contendere to the 4 counts of burglary not in a dwelling, under the *Cooksy* [sic] decision reserving the right to appeal on the issue of illegal search and seizure and voluntariness of confession. [sic]

THE COURT: Okay. Mr. Deal, with the understanding that you have a right to appeal *those search and seizure issues that have been discussed at some length, as to whether or not your—the police properly searched your vehicle*, with the understanding that that can be appealed do you understand that by pleading guilty on all of the other issues that you're giving up your right to be confronted [sic] by a jury and have a trial?

MR. DEAL: Yes, sir.

(Emphasis added).

6. *See, e. g., Coolidge v. New Hampshire*, 403 U.S. 443, 446, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971); *Reeves v. State*, 599 P.2d at 738; *Klenke v. State*, 581 P.2d 1119, 1121 (Alaska 1978).

7. This position is entirely consistent with the *Gallo* decision. In *Gallo*, police officers investigating a recent shooting entered an apartment in search of a suspect named "Bill" and found a person named "Bill" pretending to be asleep on the floor of the front room. This individual was taken outside where the victim informed the officers that he was not the assailant. The officers then re-entered the apartment and located the defendant who was hiding in a closet. At the trial court level, the defendant unsuccessfully challenged the warrantless search of the apartment on the ground that the officers lacked probable cause. On appeal, the defendant was allowed to refine this general argument with the previously unraised theory that, even if probable cause existed for the initial search of the apartment, the fact that the first "Bill" seized was not the assailant destroyed any probable cause for a second search. *State v. Gallo*, 582 P.2d at 562–64.

8. We have recently expressed our disapproval of attempts to invoke the exclusionary rule for the first time on appeal.

The exclusionary rule is not the type of doctrine designed to protect against conviction of the innocent. Rather, it is a prophylactic device to curb improper police conduct and to protect the integrity of the judicial process. Thus, justice does not generally require that it be applied on appeal where it is not urged at trial or where new grounds for its invocation are presented on appeal.

*Moreau v. State*, 588 P.2d 275, 280 (Alaska 1978).

seized was in fact in plain view but also that the initial intrusion which afforded the view was lawful, that the discovery of the evidence was inadvertent, and that the incriminating nature of the evidence was immediately apparent. *See, e. g., Reeves v. State,* 599 P.2d at 738; *Klenke v. State,* 581 P.2d 1119, 1121 (Alaska 1978); *Anderson v. State,* 555 P.2d 251, 256–60 (Alaska 1976); *State v. Spietz,* 531 P.2d 521, 523–24 (Alaska 1975). Deal maintains that none of these requirements were satisfied in the case at bar.

■ Deal's first argument goes to the location of the money bags. Contrary to the finding of the trial court,[9] Deal maintains that the money bags were not in plain view but were discovered only after Sgt. Ahlfors had thoroughly searched the car. The resolution of conflicts in testimony at the suppression hearing is within the province of the trial court. *Frink v. State,* 597 P.2d 154, 167 (Alaska 1979). We will substitute our opinion for that of the trial court only when, after viewing the evidence in the light most favorable to the prevailing party below, there is no substantial evidence in the record in support of the trial court's finding. *Stumbaugh v. State,* 599 P.2d 166, 172 (Alaska 1979); *McKinney v. State,* 566 P.2d 653, 659, *reh. granted,* 570 P.2d 733 (Alaska 1977). In this instance, although there is conflicting testimony, the trial court's finding is clearly supported by Sgt. Ahlfors' testimony.[10]

■ Deal also contends that Sgt. Ahlfors had no right to enter Deal's car and thus was not in a place where he had a legal right to be when he first saw the money bags. The state replies that Sgt. Ahlfors had both the right and the duty to enter the vehicle in order to secure it.[11] In *Schraff v. State,* 544 P.2d 834 (Alaska 1975), we approved of an officer's efforts to secure a vehicle left unattended in a parking lot by its temporarily incapacitated owner, stating: "We do not disapprove of Trooper Ahlfors' efforts to secure the vehicle. Indeed, the officer may have had a duty to do that very thing." *Id.* at 845. *Accord, State v. Starr,* 581 P.2d 706, 710 (Ariz.App.1978).

---

9. In denying Deal's motion to suppress, the trial court stated:

> From all of the testimony given in the hearing on defendant's motions to suppress and to dismiss, I am satisfied that, at the time Officer Ahlfors observed the money bags in question, he was in a place where he had a legal right to be and that the bags were in plain view.

10. On direct examination Sgt. Ahlfors testified as follows:

> Q. Okay. Now, what did you discover in the process of securing this vehicle?
> A. In the process of securing the vehicle I found 2 rolled money bags on the passenger floor board of the vehicle, near the seat.
> . . . .
> Q. Okay. And what—where were you standing when you first saw them, sir, were you sticking your head underneath the seat there, how—what was your body position at that point?
> A. I was standing by the door, outside the vehicle, per se, I wasn't in the vehicle, and you know, I was just—and I observed the money bags on the floor board next to the seat. I wasn't, you know, stepped into the vehicle had my head down, it was—had my arm in under the seat. I was just, you know, outside the vehicle. The door was open and . . . . .

11. At the time of Deal's arrest, the procedure to be followed upon the arrest of an operator of a motor vehicle was set forth in 13 AAC 02.350, which provided as follows:

> *Custody of Vehicle When Operator is Arrested.* When a police officer arrests and detains the operator of a motor vehicle, the officer shall impound and remove the vehicle to a place of safety; however, the operator may elect to have another immediately available person who is legally licensed to operate a motor vehicle, drive or otherwise remove the vehicle as the operator directs. The operator may designate the nearest available garage or tow car operator of his choosing to remove the vehicle. If the operator does not so indicate, the officer shall make the arrangements necessary to remove the vehicle.

Effective June 28, 1979, this regulation was repealed. The state concedes that this regulation was violated in the case at bar; Officer Anastay did not afford Deal an opportunity to have one of his two companions remove his vehicle from the scene. Deal did not, however, raise this point before the trial court, nor did he seek to raise it as plain error. As such, we hold that the issue of the effect of this violation is not properly before us in this appeal. *See Gray v. State,* 596 P.2d at 1158; *Burford v. State,* 515 P.2d 382, 383 (Alaska 1973).

We believe the reasoning in *Schraff* and *Starr* is equally applicable to the case at bar. A police officer is under a duty to protect the lives and property of the public. *Lee v. State*, 490 P.2d 1206, 1209–10 (Alaska 1971). Where an officer is aware that the operator of an unattended,[12] unsecured vehicle will not be returning to the vehicle in the near future, his entry of that vehicle for the limited purpose of securing it is entirely justified. Indeed, where motivated by a good faith desire to protect the contents of the vehicle, such conduct is commendable.

In view of our acceptance of the trial court's finding that the money bags were discovered in plain view, it is unnecessary to discuss the acceptable scope of this type of conduct. It is sufficient to note that the opening of a car door is permissible.

█ Deal's next contention is that the discovery of the money bags was not inadvertent. We find this argument to be totally without merit. In *State v. Davenport*, 510 P.2d 78 (Alaska 1973), we refused to invalidate the seizure of several stolen furs discovered during the execution of an unrelated search warrant despite the fact that prior to the search the officers knew that some furs might be found. In so holding we stated that "[i]t seems to us unreasonable to deny the police the right to seize, simply because the police had some idea they might find the material which they later discovered." *Id.* at 87. Here, there is no suggestion that Sgt. Ahlfors knew that the vehicle contained any incriminating evidence. The most that can be said is that he observed one of the individuals in the car make furtive movements as he approached

the vehicle and that he was aware that Deal was a suspect in some recent burglaries. This type of general knowledge is wholly insufficient to invalidate a seizure on the grounds that the discovery was not inadvertent.[13]

█ Finally, Deal contends that Sgt. Ahlfors had no probable cause to seize the bags at the time of their discovery. It is well-settled that it is not enough that the evidence seized was in plain view. "There must, of course, be a nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior." *Id.* at 85, *quoting Warden v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782, 792 (1967). Moreover, the incriminating nature of the item to be seized must be "immediately apparent." *Coolidge v. New Hampshire*, 403 U.S. at 466, 91 S.Ct. 2022, at 2040, 29 L.Ed.2d at 583; *Klenke v. State*, 581 P.2d 1119, 1123 (Alaska 1978). As we noted in *Klenke*:

> The requirement that the incriminating nature of property be "immediately apparent," so as to allow its seizure under the plain view exception to the warrant requirement, "means only that the officer must have probable cause to believe the property is [stolen, so as to be] subject to seizure." Here, the circumstances "gave rise to a reasonable inference that [the officers] had stumbled upon stolen goods." Such being the case, the officers had probable cause to believe that the various items of property were stolen.

*Id.* (citations omitted).

█ Deal relies heavily on the Oregon case of *State v. Hoggans*, 582 P.2d 466, 469

---

12. In this case, the vehicle was not, in fact, unattended. Deal's two companions had remained in the vehicle after his arrest. At the time Sgt. Ahlfors approached the vehicle, however, he did not know whether these individuals had any authority to be in the vehicle. He only knew that the operator of the vehicle had been arrested and removed from the scene. In the absence of any reason to believe that these individuals were authorized by Deal to care for the vehicle, we cannot say that Sgt. Ahlfors acted improperly in moving to secure the vehicle.

13. The requirement that the discovery of incriminating evidence be inadvertent was set forth in the plurality decision of *Coolidge v. New Hampshire*, 403 U.S. 443, 469–71, 91 S.Ct. 2022, 2040, 29 L.Ed.2d 564, 585–86 (1971). In *State v. Davenport*, 510 P.2d 78 (Alaska 1973), we discussed the applicability of the inadvertence requirement to the facts there involved and held that the search must be in good faith and cannot be a pretext. *Id.* at 86–87. We have also discussed the inadvertence requirement in different contexts in *Sumdum v. State*, 612 P.2d 1018, 1022 (Alaska 1980) and *Reeves v. State*, 599 P.2d 727, 738–39 (Alaska 1979).

(Or.App.1978), for the proposition that the plain view doctrine does not authorize the seizure of observed property for the purpose of determining whether or not it is evidence or contraband. Although we agree with this statement in the abstract, we are not convinced that it applies in the case at bar. In *Hoggans*, the officer had no reason to believe that the observed items were stolen; he was not even aware that a burglary had taken place. In this case, Sgt. Ahlfors knew that Deal was a suspect in several recent burglaries and that Deal had recently purchased a car with a large number of small bills.

■ Deal also relies on our decision in *Anderson v. State*, 555 P.2d 251 (Alaska 1976). Once again, we feel Deal's reliance is misplaced. In *Anderson*, a crucial factor was that the officer's original sighting of the slides did not in and of itself give rise to any inference that the slides were evidence of a crime. It was only after the contents of the slides were examined that their evidentiary value was revealed. In the case at hand, the money bags were not similarly innocuous. Rather, when considered in conjunction with the information known to Sgt. Ahlfors at that time, his inference that he had stumbled onto evidence of a crime was entirely reasonable. This being the case, the seizure of the money bags must be upheld.[14]

We turn now to a review of Deal's sentence. Deal was sentenced to five years on each of the four counts of burglary not in a dwelling. The sentences on Counts I and II are to run consecutively, as are the sentences on Counts III and IV. The sentences on Counts I and II, however, are to run concurrently with the sentences on Counts III and IV. The trial court further ordered that seven and one-half years of this sentence be suspended and that Deal complete five years of probation and make restitution. Thus, the total sentence was ten years imprisonment with seven and one-half years suspended. The maximum sentence Deal could have received was 20 years. AS 11.20.100. Deal asserts that this sentence is excessive in light of his age,[15] his past record[16] and the fact that he admittedly is not the worst type of offender. Additionally, Deal maintains that the trial court placed undue emphasis on the need for deterrence and thus gave insufficient weight to Deal's need for rehabilitation.

■ This court will modify a sentence on appeal only where the sentencing court was clearly mistaken in imposing a particular sentence. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974). After reviewing the record as a whole, we are convinced that the trial court conscientiously considered the relevant sentencing factors and fashioned an appropriate sentence based upon these considerations.[17] This being the case, we cannot conclude that the trial court was clearly mistaken in imposing the sentence that it did.

Deal's conviction and sentence are AFFIRMED.

BOOCHEVER, J., not participating.

14. Since we have upheld the legality of the seizure of the money bags, it is unnecessary to reach Deal's "fruit of the poisonous tree" argument.

15. Deal was 18 years old at the time of the burglaries.

16. Prior to his conviction on these charges, Deal's only conviction as an adult was on the negligent driving charge which led to his arrest for the burglaries. As a juvenile, Deal was apparently convicted in Texas of being an accomplice to a burglary in a dwelling and sentenced to one year of probation. He was released from probation six months early due to good behavior.

17. These purposes are:

[R]ehabilitation of the offender into a non-criminal member of society, isolation of the offender from society to prevent criminal conduct during the period of confinement, deterrence of the offender himself after his release from confinement or other penological treatment, as well as deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves.

*State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970) (footnote omitted).