Aaron **AHKIVGAK**, Appellant,

v.

**STATE of Alaska,** Appellee.

Lloyd **AHKIVGAK**, Appellant,

v.

**STATE of Alaska,** Appellee.

Nos. A–1269, A–1303.

Court of Appeals of Alaska.

Dec. 19, 1986.

Linda Wingenbach, Asst. Public Defender, Barrow, and Dana Fabe, Public Defend-

er, Anchorage, for appellant, Aaron Ahkivgak.

J. John Franich, Asst. Public Advocate, Fairbanks, and Brant McGee, Public Advocate, Anchorage, for appellant, Lloyd Ahkivgak.

Nancy R. Simel, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Aaron Ahkivgak pled no contest to second-degree burglary. AS 11.46.310. Lloyd Ahkivgak pled no contest to first-degree theft and second-degree burglary. AS 11.-46.120 and AS 11.46.310. Both preserved their right to appeal the trial court's denial of their suppression motion. *See Oveson v. Anchorage*, 574 P.2d 801, 803 (Alaska 1978); *Cooksey v. State*, 524 P.2d 1251, 1256 (Alaska 1974). Both assert, on appeal, that an illegal search produced the evidence against them. Lloyd Ahkivgak also challenges the amount of restitution he was ordered to pay, and the trial court's amendment of the restitution order.

North Slope Borough Public Safety Officers Harold Snowball and Robert Savenko received information that Lloyd and Aaron Ahkivgak might have burglarized a store in Barrow and that evidence of the burglary might be in their home. When the officers went to the Ahkivgak residence, Mary Ahkivgak, Lloyd's and Aaron's mother, complied with the officers' request to enter and speak with Aaron. She told the officers that Aaron was asleep upstairs. Once upstairs, Savenko and Snowball split up to search for Aaron. Snowball found Aaron in a bedroom on one side of the stairs. Aaron was sitting in bed and Snowball asked him to "go down to public safety and talk with [him and Savenko]."

Savenko continued down the hall, passing an open doorway to the room in which Snowball and Aaron were speaking. Savenko testified that when he passed the door to Aaron's room, he did not know Snowball had found Aaron and that he did not see or hear Snowball and Aaron talking. Snowball testified that he did not see or hear Savenko pass the doorway. Aaron saw Savenko walk past the door, and testified that Savenko did not look into the room.

Savenko entered a room at the end of the hall. He saw a wall consisting of studs only partially covered by sheetrock. Behind or between these studs, Savenko noticed stereo boxes marked with the same brand name as items stolen from the trading post. The officers seized the stereo boxes.

Snowball questioned Aaron about the seized boxes. Aaron and his brother, B.A., as well as W.A., who B.A. implicated, made statements after being questioned concerning the seized boxes. Lloyd was arrested, based on these statements. The seized evidence and the statements provided the basis for the charges against Lloyd and Aaron.

Aaron and Lloyd moved to suppress the evidence seized and to bar admission of the various statements, alleging Savenko's search was illegal. The trial court denied these motions. Aaron and Lloyd pled no contest to the charges against them, preserving their right to appeal the evidentiary issues.

Superior Court Judge Michael I. Jeffery ordered Lloyd Ahkivgak to pay $10,000 restitution. The trial court subsequently set a sentence modification hearing on its own motion. At that hearing, Judge Jeffery ordered that the full value of Lloyd's permanent fund dividend checks be applied to restitution while Lloyd was incarcerated or on probation.

## I. VALIDITY OF THE SEARCH

■ The Ahkivgaks challenge the trial court's denial of their motion to suppress. The Fourth Amendment to the United States Constitution and Article I, section 14

of the Alaska Constitution bar unreasonable searches and seizures. A warrantless search is *per se* unreasonable unless it falls within an exception to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *Deal v. State*, 626 P.2d 1073, 1078 (Alaska 1980).

■ An exception to the warrant requirement is the plain view doctrine. Under this doctrine, a police officer may seize evidence which the officer observes in plain view, from a place at which the officer has a right to be. *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971); *Deal*, 626 P.2d at 1078. To satisfy the plain view doctrine, the state must prove: 1) the initial intrusion was lawful; 2) the discovery of the evidence was inadvertent; and 3) the evidence's incriminating nature was immediately apparent. *Deal*, 626 P.2d at 1079; *Reeves v. State*, 599 P.2d 727, 738 (Alaska 1979). The state must prove by a preponderance of the evidence that the exception to the warrant requirement existed. *Chilton v. State*, 611 P.2d 53, 55 (Alaska 1980); *Schraff v. State*, 544 P.2d 834, 838 (Alaska 1975).

■ On appeal of a denial of a motion to suppress, the reviewing court views the evidence in the light most favorable to the prevailing party. *Deal*, 626 P.2d at 1079; *Castillo v. State*, 614 P.2d 756, 765 (Alaska 1980). The trial court's factual findings are only reversed if they are clearly erroneous. *Chilton*, 611 P.2d at 55; *Hubert v. State*, 638 P.2d 677, 683 (Alaska App.1981). Reversal is proper where there is no substantial evidence supporting the trial court's findings. *Deal*, 626 P.2d at 1079.

■ The trial court found Snowball and Savenko had valid consent to look for Aaron upstairs. Judge Jeffery also found that Snowball discovered Aaron awake and did not have to raise his voice, that Snowball and Aaron spoke in normal tones, and that Savenko walked past Aaron's open doorway without either officer seeing or hearing the other. Judge Jeffery accepted Snowball's testimony that the Ahkivgak children shared the upstairs of the house without specifically assigned rooms. The trial court found Savenko was not aware Snowball had found Aaron when Savenko passed Aaron's room and discovered the stereo boxes. Finally, the court also found that the boxes' labels were those of a brand stolen in the burglary. The issue here was the officers' credibility, and the trial court resolved that issue against the Ahkivgaks. We cannot say there was no substantial evidence supporting the trial court's findings. Thus, the findings are not clearly erroneous.

## II. RESTITUTION

Judge Jeffery ordered Lloyd to pay $10,000 restitution. Lloyd asserts that the court did not adequately investigate his ability to pay before setting the amount. While Lloyd raises other issues concerning the restitution ordered, we need not reach those issues because we agree that the trial court's inquiry into Lloyd's ability to pay was inadequate. We remand for further fact finding on this issue.

■ Alaska Statute 12.55.045(a) authorizes the trial court to order restitution, but requires that the court consider the defendant's financial resources and the burden restitution will impose before setting the amount. The court must make a serious inquiry into the defendant's ability to pay. This inquiry should cover present assets, past earning capacity, and potential future earnings, based on the defendant's experience, training, and any other relevant factors. *Karr v. State*, 686 P.2d 1192, 1197 (Alaska 1984); *Zimmerman v. State*, 706 P.2d 343, 344 (Alaska App.1985). Restitution should not be imposed in an amount the defendant clearly cannot pay, or in an amount the trial court believes the defendant cannot pay. *Karr*, 686 P.2d at 1196, 1197.

■ Judge Jeffery erred in inadequately investigating Lloyd's ability to pay. In *Zimmerman*, we held the trial court's factual findings inadequate because they did not include a discussion of the jobs the

defendant might later find, and the likely earnings from those jobs. 706 P.2d at 344–45. Judge Jeffery specifically stated he had "limited information ... of Mr. Ahkivgak's ability to pay." At Lloyd's hearing, no evidence was presented of specific jobs Lloyd could perform. The only potential job discussed was Lloyd's working for the burglarized store's owner, but this was little more than speculation. In ordering restitution, the trial court did not specify any source from which Lloyd could obtain the necessary income. The trial court's exploration of the defendant's ability to pay must include an examination of specific potential sources of income and the likely amounts of income those sources will generate. Thus, the exploration of Lloyd's ability to pay restitution was inadequate.

Judge Jeffery also erred in ordering Lloyd to pay an amount which the facts indicated was not realistic. The presentence report indicates Lloyd quit school during the 11th grade. His only work experience has been as an airline freight handler for nine months and as a casual laborer for two months. Lloyd has no known assets. The presentence report recommends restitution, but states restitution "would be difficult to collect" because of Lloyd's work history. Even while asking for restitution, the state expressed doubts about Lloyd's ability to pay. Judge Jeffery stated, at Lloyd's sentencing hearing, that "based on the limited information ... [presented] of Mr. Ahkivgak's ability to pay ... an amount of $10,000 is going to be optimistic...." The supreme court has pointed out that ordering a defendant to pay an amount the trial court recognizes as unrealistic controverts the goals of ordering restitution. *Karr*, 686 P.2d at 1197. It was therefore improper for the trial court to order restitution in an amount which the evidence before it indicated Lloyd could not pay.

The convictions are AFFIRMED. The judgment against Lloyd Ahkivgak is REMANDED for further findings on his ability to pay restitution.