**Douglas Leon SMITH, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–4054.**

Court of Appeals of Alaska.

Dec. 3, 1999.

Rehearing Denied Dec. 23, 1999.

Walter Share, Seattle, WA, and David Loutrel, Anchorage, for Appellant.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

This case presents the issue of whether the trial court properly applied the inevitable discovery exception to the exclusionary rule adopted by the Alaska Supreme Court in *Smith v. State.*[1] We affirm the trial court's decision.

Douglas Leon Smith was convicted, following a jury trial, of misconduct involving a controlled substance in the third degree, a class B felony.[2] Smith now appeals, arguing that evidence obtained from his home should be suppressed because Superior Court Judge Eric T. Sanders incorrectly applied Alaska's inevitable discovery exception.

1. *Drug Transaction and Arrest:* In February of 1990, Wilbur Hooks, an investigator with the Anchorage Police Department, arranged to sell a kilogram of cocaine to Edwardo Aragon in the parking lot of the Carrs store on the corner of Muldoon Road and Northern Lights Blvd. (During the transaction, Hooks wore a wire so that his conversations could be monitored by Officer Linda O'Brien, the case officer.) After meeting in the parking lot, Aragon asked Hooks to accompany him to the house of his "money man" to complete the transaction. Hooks refused to leave the parking lot so Aragon called his "money man" to arrange to have him join them. Aragon told Hooks that his "money man" was white and would be driving a brown pickup truck. The "money man," appellant Smith, arrived approximately ten minutes later in a brown pickup truck. When Smith arrived in the parking lot, Officer O'Brien called the Anchorage Police Department to obtain a registration check on the pickup truck. From this check, O'Brien learned that the vehicle was registered to a Douglas Leon Smith who lived at 7929 East Third Avenue. Hooks received $26,000 from Smith, thus completing the transaction. Following a high-speed chase, police arrested Smith. In Smith's vehicle, police found utility bills that also showed that Smith lived at 7929 East Third Avenue. However, the address that the police obtained from Smith's driver's license differed from the address found on Smith's vehicle registration and utility bills.

2. *O'Brien's Interview of Smith:* Officer O'Brien met Smith in an interrogation room at the police station and questioned him to obtain basic booking information. She began by asking his name, height, weight, social security number, and driver's license number. In doing so, she followed a standardized booking form. Smith requested a phone call. O'Brien told Smith that he could make a phone call once he arrived at the jail. She then asked Smith for his address. He asked if he was required to answer. O'Brien replied that she would ask the Magistrate to require Smith to provide his address as a condition of bail. Smith then gave his address. O'Brien completed the booking form, then read Smith his *Miranda* rights.[3]

3. *Search Warrant:* O'Brien obtained a search warrant for the residence at 7929 East Third Avenue. During the warrant hearing, O'Brien told the magistrate that she knew Smith's address because he had given it to her and because it was listed on his driver's license. The police searched Smith's residence on East Third Avenue and discovered records of drug sales, guns, marijuana, cocaine, drug paraphernalia, and $100,000 in cash.

---

1. 948 P.2d 473 (Alaska 1997).

2. AS 11.71.030(a)(1)(c).

3. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. *Trial and Initial Motion to Suppress:* At trial, the state sought to have these materials admitted into evidence. Smith moved to suppress on the grounds that Officer O'Brien had denied him his statutory right to make a phone call and violated his constitutional rights when she questioned him, obtaining his address. He argued that the search warrant and all the evidence which police discovered in serving the search warrant should be suppressed as a result of these violations. At the suppression hearing, O'Brien testified that she relied on other sources of information to obtain Smith's address. She explained that she initially learned that Smith lived at 7929 East Third Avenue by running a check on his vehicle registration. She also testified that this was corroborated by Aragon's general description of where Smith lived. Superior Court Judge Karl Johnstone found that Officer O'Brien had violated Smith's right, under AS 12.25.150, to make a phone call.[4] However, the judge denied Smith's motion to suppress because he found that Officer O'Brien had obtained Smith's address from his vehicle registration before she questioned him. The court found that O'Brien had questioned Smith to obtain booking information rather than to gain information to be used in a search warrant. He concluded that the fact that O'Brien had violated Smith's rights by denying him his right to make a telephone call did not cause Smith to tell O'Brien his address when she questioned him. Smith was convicted and appealed, arguing, among other things, that Judge Johnstone erred in not granting his motion to suppress because when Officer O'Brien questioned him, his rights under AS 12.25.150 and the state and federal constitutions had been violated.

5. *Independent Source Litigation:* On appeal, we concluded that Judge Johnstone did not err in finding that Smith's rights, under AS 12.25.150 and *Zsupnik,* had been violated. We concluded that the court erred in not suppressing Smith's statement to Offi-

cer O'Brien revealing his address as a fruit of this violation. But since it appeared that the warrant itself might not have been a fruit of the violation because the police arguably were aware of Smith's address before they illegally obtained it, we remanded the case for application of the independent source exception to the exclusionary rule.[5] On remand, Judge Johnstone heard evidence regarding the applicability of the independent source doctrine and found that O'Brien had obtained Smith's address from checking his registration before she questioned him and concluded that the police were aware of Smith's address and would have obtained a warrant to search Smith's residence even without Smith's statement to Officer O'Brien.[6] We affirmed Judge Johnstone's decision to deny Smith's motion to suppress.

6. *Inevitable Discovery:* Smith next filed a petition for hearing in the Alaska Supreme Court in which he argued that we erroneously upheld the trial court's application of the independent source doctrine and also argued that his rights under the state and federal constitutions had been violated. In *Smith v. State,*[7] the supreme court held that the independent source doctrine did not apply to the facts of Smith's case. The court pointed out that although O'Brien had already obtained Smith's address from his registration before she questioned him, she had not written that address down. She had actually used Smith's statement to obtain the warrant, not the registration:

> The independent source exception requires that the police know of and act on lawfully obtained independent evidence at the time they take the challenged action— here the application for a warrant. The fact that the police could have easily obtained lawful evidence is insufficient by itself to meet this requirement.[8]

The court, however, accepted the inevitable discovery exception to the exclusionary rule

---

4. *See Zsupnik v. State,* 789 P.2d 357 (Alaska 1990) (evidence obtained in violation of AS 12.25.150 must be excluded).

5. *Smith v. State,* Mem. Op. & J. No. 2641, at 6–8 (Alaska App., Mar. 10, 1993).

6. *Smith v. State,* Mem. Op. & J. No. 2956 at 2 (Alaska App., July 27, 1994).

7. 948 P.2d 473, 478 (Alaska 1997).

8. *Id.*

as a matter of state law, held that the exception might apply in this case, and remanded the case for consideration of this question.[9]

The Alaska Supreme Court described the test for the applicability of the inevitable discovery exception in the following manner: "if the prosecution can show, by clear and convincing evidence, that illegally obtained evidence would have been discovered through predictable investigative processes, such evidence need not be suppressed as long as the police have not knowingly or intentionally violated the rights of the accused in obtaining that evidence."[10]

The inevitable discovery exception, like the independent source exception, helps to balance the effects of the exclusionary rule. The supreme court noted that the " 'core rationale' for the exclusionary rule is 'to deter police from violations of constitutional and statutory protections.' "[11] The exclusionary rule prevents the prosecution from being in a better position than it would have been had a violation not occurred. Correspondingly, the independent source and inevitable discovery exceptions are "not meant to put the prosecution in a position *worse* than if no police misconduct occurred."[12]

The Alaska Supreme Court recognized several potential problems associated with the application of the inevitable discovery exception. First, the supreme court noted that the exception creates the opportunity for conjectural or hypothetical arguments regarding the inevitability of police discovery of a piece of evidence. To combat this problem, the supreme court, following Justice Brennan's suggestion in *Nix v. Williams*,[13] decided to require the police to show by clear and convincing evidence that the evidence would have been discovered by legal means.[14] This heightened evidentiary standard is designed to diminish the risk of admitting illegally obtained evidence.[15] Second, the supreme court recognized the need "to safeguard against the use of the inevitable discovery exception in cases where discovery by legal means was possible, but not truly inevitable."[16] Under this newly-adopted test for inevitable discovery, the prosecution " 'must establish, first, that certain *proper and predictable* investigatory procedures would have been utilized in the case at bar, and second, that those procedures would have inevitably resulted in the discovery of the evidence in question.' "[17] Finally, the supreme court noted that the existence of the inevitable discovery exception may create an incentive for police illegality.[18] Accordingly, the court adopted a good faith requirement that prevents application of the exception when police have intentionally or knowingly violated a suspect's rights.[19]

Following the supreme court's decision, the case was remanded to Superior Court Judge Eric Sanders (Judge Johnstone having retired). Following an evidentiary hearing, Judge Sanders concluded that the state established that the inevitable discovery exception to the exclusionary rule applied and declined to suppress the evidence which derived from Smith's statement to the police. In his findings, Judge Sanders found that the circumstances surrounding Smith's arrest, the large sums of money, and the large quantities of drugs, led investigators to believe that they were dealing with a major supplier of drugs. He found that Hooks and O'Brien, as experienced investigators, would conduct a thorough investigation that would include a search of the defendant's house. Judge Sanders concluded that "[i]t would be a routine step to try to locate Smith's home and

---

9. *Id.* at 478–81.

10. *Id.* at 481.

11. *Id.* at 478 (*quoting Nix v. Williams*, 467 U.S. 431, 442–43, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)).

12. *Id.* at 478.

13. 467 U.S. 431, 459–60, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

14. *Smith*, 948 P.2d at 480.

15. *Id.*

16. *Id.*

17. *Id.* (*quoting* 5 WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 11.4(a) at 248 (3d ed.1996)).

18. *Smith*, 948 P.2d at 481.

19. *Id.*

search it.... Therefore, the police were following a predictable investigatory procedure when they decided to seek a search warrant soon after Smith was arrested." In addition, Judge Sanders noted that other pieces of evidence—Smith's vehicle registration, receipts and bills found in Smith's vehicle, corroborating comments regarding Smith's address made by Aragon—made discovery of Smith's address inevitable regardless of his statements to Officer O'Brien or the conflicting information on his driver's license.

■ We are to uphold Judge Sanders' findings of fact unless we find they are clearly erroneous.[20] We conclude that his findings are supported by the record and are not clearly erroneous.

■ Smith argues that federal courts only apply the inevitable discovery doctrine to situations where the government can prove that a totally independent investigation had been previously initiated which would have led to the inevitable discovery of the information in question. But we have previously dealt with the inevitable discovery doctrine in applying federal law in *Hazelwood v. State.*[21] In that case, we relied on decisions from the Ninth Circuit for applying the inevitable discovery rule. We quoted the test from the Ninth Circuit as follows:

> [T]his Circuit does not require that the evidence be obtained from a previously initiated, independent investigation. The government can meet its burden by establishing that, by following routine procedures, the police would inevitably have uncovered the evidence.[22]

The statement by the Ninth Circuit of the test for determining whether evidence qualifies under the inevitable discovery rule is consistent with the language which the Supreme Court of Alaska used in setting out its statement of the rule. We see no conflict between the test set out by the Alaska Supreme Court and the test set out by the Ninth Circuit. Although other circuits may have different formulations of the inevitable discovery test, it seems reasonable for us to follow the formulation which the federal court uses in the Ninth Circuit, the circuit which includes the State of Alaska.

From the facts of Smith's case, it seems clear that the Alaska Supreme Court did not intend to adopt an inevitable discovery rule which would require an independent investigation. It was clear that the police did not obtain Smith's address from an independent investigation. The state's claim was that the inevitable discovery rule applied because the police had already obtained Smith's address before they questioned him. If the supreme court concluded that the state's theory had no merit, it seems unlikely that it would have remanded the case to allow the state the opportunity to develop that theory. We conclude that the state was not required to prove that the information about where Smith resided needed to be obtained from a previously initiated independent investigation. The state was required to show "by clear and convincing evidence, that illegally obtained evidence would have been discovered through predictable investigative processes."[23] This is the test which Judge Sanders applied, and as we have previously stated, his findings are supported by the record and are not clearly erroneous.

■ Smith argues that Judge Sanders erred in finding that Officer O'Brien did not knowingly or intentionally violate his rights. In rejecting this claim, Judge Sanders found that at the time O'Brien questioned Smith, "the police already possessed much information which revealed Smith's home address and the investigators undoubtedly would have been able to obtain a search warrant for that location." He found that when O'Brien questioned Smith, she was merely questioning him to obtain basic background information such as "his name, height, social security number, driver's license number, home and

---

**20.** *See Wilburn v. State,* 816 P.2d 907, 911 (Alaska App.1991); *Ahkivgak v. State,* 730 P.2d 168, 171 (Alaska App.1986).

**21.** 912 P.2d 1266, 1269–77 (Alaska App.1996).

**22.** *Id.* at 1271 (*quoting United States v. Ramirez–Sandoval,* 872 F.2d 1392, 1399 (9th Cir.1989) (citation omitted)).

**23.** *Smith,* 948 P.2d at 481.

work address, phone number, whether he was ill and whether he was under the influence of drugs or alcohol." He found that O'Brien "did not seek Smith's address for reasons related to the warrant application." He noted that Judge Johnstone had reached similar conclusions in earlier findings, that O'Brien "was requesting 'simple background information which is routine' when someone is arrested for a felony."

Smith contends that even if we accept these findings, that the record shows that O'Brien knowingly and intentionally violated Smith's rights. He points out that O'Brien certainly intended not to allow Smith to make a telephone call and not to give him *Miranda* warnings until after she had obtained background information from him. But the *Smith* opinion makes clear that, when the supreme court referred to a knowing or intentional violation of rights, the court was referring to the officer's awareness that his actions would violate the defendant's rights. The doctrine of inevitable discovery is available so long as the police did not act in bad faith.

In its *Smith* opinion, the Alaska Supreme Court accepted Professor Lafave's rationale for a good faith requirement.[24] Lafave describes the reasoning behind the good faith requirement in the following manner:

> Because one purpose of the exclusionary rule is to deter [statutory or constitutional violations], there is much to be said for the proposition that the "inevitable discovery" rule should be applied only when it is clear that "the police officers have not acted in bad faith to accelerate the discovery" of the evidence in question.[25]

The supreme court also cited favorably to the opinion of the North Dakota Supreme Court in *State v. Phelps*, in which that court stated that it would permit application of the doctrine "only when police have not acted in bad faith."[26] The Alaska Supreme Court simply adopted this same test, but stated it in terms of an intentional or knowing violation. Judge

Sanders interpreted *Smith* in this manner, and concluded that the state had shown that O'Brien did not act in bad faith. This finding is supported by the record and is not clearly erroneous.

Smith contends that O'Brien violated his Fifth amendment right to remain silent and his Sixth amendment right to counsel when she questioned him, obtaining his address. He argues that Judge Sanders should have decided on remand if O'Brien had intentionally or knowingly violated these constitutional rights. Smith notes that he raised these constitutional issues in the trial court in his initial motion to suppress, before the court of appeals in his appeal from the trial court's decision to deny suppression, and in his petition and brief to the supreme court. He argues that the constitutional issues were not reached because each court found a statutory violation and had no need to consider alternative constitutional issues.

In our former decision, although we suppressed Smith's statements to Officer O'Brien, we affirmed Smith's conviction by applying the independent source exception to the exclusionary rule.[27] We implicitly rejected the claim that Smith would be entitled to any greater relief if he showed constitutional violations rather than a statutory violation. Smith raised his constitutional claims before the supreme court. In its *Smith* opinion, the supreme court recognized only a violation of Smith's rights under AS 12.25.150.[28] It appears to us that the supreme court either implicitly rejected Smith's constitutional claims or concluded that even if Smith established a violation of his constitutional rights the same inevitable discovery test would apply. As we have previously stated, it does not appear to us that the federal test for inevitable discovery, as stated by the Ninth Circuit, is more strict than the test applied by the Supreme Court of Alaska. Furthermore, the trial court's prior findings make it clear that Officer O'Brien did not act in bad

---

24. *Id.*

25. 5 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 11.4(a) at 245 (3d. ed.1996).

26. 297 N.W.2d 769, 775 (N.D.1980).

27. *Smith v. State*, Mem. Op. & J. No. 2956 (Alaska App., July 27, 1994).

28. *Smith*, 948 P.2d at 481 n. 7.

faith when she questioned Smith. We therefore conclude that, even if Smith established that the state also violated his constitutional rights, the state has established that the information concerning his address was the product of inevitable discovery and that there was no basis for suppressing the results of the search of his residence.

■ Smith argues that Judge Sanders erred in failing to allow him to engage in further discovery about Officer O'Brien and her background in conducting interviews of suspects. We find no merit to Smith's contention. After Judge Sanders entered his findings on remand, Smith requested further discovery. Judge Sanders denied this request, noting that Smith was aware that O'Brien's good faith and knowledge were at issue on remand. He pointed out that Smith had specifically informed the court that he would not be seeking further discovery. He concluded that Smith had waived his opportunity to engage in further discovery and that it was inappropriate for Smith to ask for further discovery after the court had entered its ruling. We conclude that Judge Sanders did not abuse his discretion in reaching this conclusion.

The conviction is AFFIRMED.